IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MISSOURI SUGARS, LLC**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:24-CV-1359-L** |
| | § | |
| **CAKE CRAFT FACTORY, LLC** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The Order of Reference (Doc. 15) referring Defendant's Motion to Set Aside Clerk's Entry of Default (Doc. 12) is hereby **vacated**. Further, for the reasons herein explained, the court **grants** Defendant's Motion to Set Aside Clerk's Entry of Default ("Motion") (Doc. 12) and **denies as moot** Plaintiff's Motion for Default Judgment (Doc. 9).

**I.     Background**

This breach of contract action was filed by Plaintiff Missouri Sugars LLC ("Plaintiff" or "Missouri Sugar") on June 4, 2024. On June 11, 2024, Plaintiff file an executed return of summons indicating that Defendant Cake Craft Factory, LLC ("Defendant" of "Cake Craft") was served on June 7, 2024, making its answer due June 28, 2024. After Defendant did not file an answer or otherwise respond, Missouri Sugar moved the clerk of court for entry of default on August 9, 2024, which the clerk entered on August 12, 2024. Thereafter, Plaintiff filed its Motion for Default Judgment on October 28, 2024. Without leave of court, Cake Craft filed its Answer on November 15, 2024, which the court advised it would strike unless Defendant moved to set aside the clerk's entry of default by December 2, 2024. Cake Craft filed is current Motion seeking to set aside the clerk's entry of default on December 2, 2024, in accordance with the court's order.

**Memorandum Opinion and Order – Page 1**

## II.     Applicable Legal Standard

The decision to set aside an entry of default under Federal Rule of Civil Procedure 55(c) is within the discretion of the district court. *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 (5th Cir. 1992). A court may set aside an entry of a default for good cause shown. Fed. R. Civ. P. 55(c); *Lacy v. Sitel Corp.*, 227 F.3d 290, 291-92 (5th Cir. 2000) (citing Fed. R. Civ. P. 55(c)). The good cause standard is a liberal one. *Effjohn Int'l Cruise Holdings, Inc. v. A & L Sales Inc.*, 346 F.3d 552, 563 (5th Cir. 2003). Moreover, a motion to set aside the entry of default "is more readily granted than a motion to set aside a default judgment." *In re OCA, Inc.*, 551 F.3d 359, 370 (5th Cir. 2008). In determining whether good cause is present to set aside a default, a court considers "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is present." *Lacy*, 227 F.3d at 292 (citation and quotation marks omitted). A court also considers whether the defaulting party "acted expeditiously" to cure the default. *Id.* (citation omitted).

If the court determines that a default is willful—that is, intentional failure to answer or otherwise respond—such "[w]illful failure alone *may* constitute sufficient cause for the court to deny [the] motion [to set aside default]." *In re Dierschke*, 975 F.2d 181, 184-85 (5th Cir. 1992) (emphasis added). Default judgments, however, are "generally disfavored in the law" and "should not be granted on the claim, without more, that the defendant ha[s] failed to meet a procedural time requirement." *Lacy*, 227 F.3d at 292 (quoting *Mason & Hanger–Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984)). This is because the Fifth Circuit has adopted a policy in favor of resolving cases on the merits and against the use of default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a

drastic remedy, not favored by the Federal Rules and resorted to by the courts in extreme situations [and] are available only when the adversary process has been halted because of an essentially unresponsive party.") (internal quotations and citations omitted).

Consideration of the foregoing legal standard weighs in favor of setting aside the entry of default against Cake Craft here.

### III.   Discussion

### A.  Willfulness

Although Cake Craft waited four and one-half months after being served with a summons and approximately three months after entry of default before making an appearance in this case by filing its Answer, it asserts in its Motion that, after Defendant was served with a copy of the Complaint filed in this action, Cake Craft's chief executive officer William Naim reached out to one of the attorney's representing Plaintiff in an effort to resolve the parties' dispute before either party incurred attorney's fees. Mr. Naim asserts in a declaration that, after having discussions with Plaintiff's counsel and owner regarding a potential resolution on July 30 and August 1, 2024, which included one telephone conversation, it was his understanding that after Plaintiff sought and obtained entry of default, Plaintiff "would hold off on taking any further action in this lawsuit until [the parties] concluded [their] settlement discussions." Doc. 13-1. Mr. Naim further states that it was never his or Defendant's intention to "play games" or "ignore this litigation." *Id.*  He states, "[t]o the contrary, [he] contacted Plaintiff's counsel soon after receiving a copy of Plaintiff's Complaint" . . . and "engaged in good faith settlement discussions with [Defendant]." *Id.* Finally, Mr. Naim states that, after learning that default was entered by the clerk and Cake Craft had filed its Motion for Default Judgment, he retained counsel and authorized the filing of an Answer, which was filed on November 15, 2024.

Plaintiff counters, based on a declaration from its owner John Yonover, that, after Defendant failed to respond to its Complaint, it sent a letter to Defendant on July 2, 2024, advising that if Defendant failed to file a responsive pleading by July 12, 2024, it intended to move for entry of default and default judgment. Mr. Yonover states that he subsequently spoke with Mr. Naim on the telephone on August 1, 2024, regarding a potential resolution of the parties' dispute. Mr. Yonover further states that, later the same day, he e-mailed Mr. Naim twice regarding a framework for a potential solution and warned that, if Mr. Naim failed to respond by the close of business, he would assume that Mr. Naim did not wish to accept Plaintiff's settlement offer, and Plaintiff would move forward with the litigation. According to Mr. Yonover, the parties' communications ended on this date with Mr. Naim not responding or ever contacting him again.

Plaintiff contends that Cake Craft has not met its burden of establishing that its delay in responding to the Complaint was not willful, and this should end the court's inquiry. Even if this does not end the court's analysis, Plaintiff contends that denial of Defendant's Motion is warranted based on consideration of the remaining factors because it will be prejudiced as a result of having incurred attorney's fees and costs, and Defendant's asserted defenses based on the validity of the contract at issue, failure to mitigate, and the existence of an arbitration provision in the contract are not meritorious.

Given the parties' acknowledgment that they were both engaging in settlement discussions in a good faith effort to resolve their dispute immediately after this lawsuit was filed until at least August 1, 2024, the court is not convinced that Cake Craft's default constitutes a per se willful default. There is also no evidence that the approximate three-month delay after negotiations ceased—during which time Cake Craft retained counsel and filed its Answer—was the result of some calculated strategy to delay the proceedings in this case. Moreover, while a finding of willful

delay *may* constitute sufficient cause for a court to refuse to set aside an entry of default, it does not automatically result in the denial of such relief or require the court to cease its "good cause" analysis. *Beall v. Cockrell*, 174 F. Supp. 2d 512, 517 (N.D. Tex. 2001) *see also Alfarouqi v. Tri-Speed Inv., Inc.*, No. 3:12-CV-3836-L, 2013 WL 5314436, at *4 (N.D. Tex. Sept. 23, 2013) (setting aside the default without deciding whether it was willful); *Southwestern Bell Tel. Co. v. Raza Telecom, Inc.,* No. 3:13-CV-1621-P, 2013 WL 11330884, at *2 (N.D. Tex. Nov. 22, 2013) ("Even if the Court found [that the defendant willfully defaulted], the liberal standard of Rule 55(c) would require [it] to find good cause since the remaining factors are met."); *Konnectcorp Int'l, Inc. v. Daniesh Suntharalingam*, No. 3:13-CV-3656-P, 2014 WL 11515583, at *4 (N.D. Tex. May 12, 2014) ("[A] finding of willfulness does not automatically lead to a denial of relief."). Accordingly, the court will examine Plaintiff's claim of prejudice and whether Defendant has presented a meritorious defense.

**B. Prejudice**

Plaintiff's contention that it has incurred attorney's fees and expenses does not give rise to the type of prejudice that would justify the denial of a request to set aside the entry of default. If Missouri Sugar prevails on the merits of its contract claim, it will be able to move to recover such fees and costs under the contract, if the contract provides for recovery of fees and costs, or under Federal Rule of Civil Procedure 54(d). *See Konnectcorp Int'l Inc.*, 2014 WL 11515583, at *3 (explaining that delay "is borne by every non-defaulting party when a default is set aside, and is thus 'insufficient to justify denial of relief.'"). Accordingly, this factor weighs in favor of setting aside the default.

### C. Meritorious Defense

The final factor also weighs in favor of setting aside the entry of default against Defendant so that the parties can proceed to the merits of their respective claims and defenses. Whether a meritorious defense exists "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Jenkens & Gilchrist a Pro. Corp. v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008). The focus and "underlying concern," is "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *In re OCA, Inc.*, 551 F.3d at 373. Thus, to succeed in setting aside a default judgment, a defendant need establish that it has a "fair probability of success on the merits." *Federal Savings and Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067, 1069 (5th Cir. 1988).

With respect to the contract, Defendant contends as follows:

> Section 9 of the Terms and Conditions of Sale section of the "Sales Contract" states: "This Sales Contract shall be accepted by Buyer through execution where indicated on the face hereof, by acceptance of product delivered in accordance with this Sales Contract or as otherwise provided under applicable law." *See* Dkt. 1-3. Cake Craft did not execute where indicated on the face of the "Sales Contract." Moreover, Cake Craft did not accept any product delivered in accordance with the "Sales Contract." Instead, the only product Cake Craft accepted (which Cake Craft paid for) was pursuant to the terms of the Purchase Orders issued by Cake Craft (*see* Dkt. Nos. 1-4 and 1-5)—not the terms of the "Sales Contract." Moreover, there are no statements by Cake Craft made in the e-mail correspondence attached as Exhibit A to Plaintiff's Complaint that somehow create a valid contract (or, alternatively, promise upon which Plaintiff's alternative claim for promissory estoppel could be based). On this basis alone, Cake Craft has established the existence of a meritorious defense sufficient to set aside the default.

Def.'s Mot. 6.

Plaintiff disagrees and responds that Defendant's signature was not required to form a valid contract, and Defendant's conduct in issuing purchase orders and purchasing sugar in accordance with the contract's term shows that the parties' understood that they had a valid contract.

Regarding Defendant's second argument, Missouri Sugar points to evidence that it contends demonstrates that "Cake Craft did not present the Purchase Orders as an offer to Missouri Sugars, but as acceptance of the Contract at issue." Pl.'s Resp. 10 (citations omitted).

With respect to its mitigation defense, Mr. Naim states in his declaration that it is his opinion, based on his experience in the industry, that the quantity of powdered and granulated sugar at issue—which is a commodity product commonly carried by grocery stores, bakeries, and manufacturers of chocolate, candy, and desserts—could have been sold by Plaintiff to its other customers with the exercise of reasonable commercial efforts instead of suing Cake Craft.

To this, Missouri Sugar responds: "Notwithstanding the fact that Missouri Sugars was contractually obligated to ensure it had product available to Cake Craft through the end of 2023, Cake Craft's argument also fails because the measure of damages sought by Missouri Sugars assumes mitigation." Pl.'s Resp. 12 (footnote omitted). For this and other reasons, Plaintiff contends that Defendant's mitigation defense fails because it is not supported by facts or applicable state law.

Finally, Cake Craft asserts that the contract at issue contains an arbitration provision. Plaintiff argues that the existence of an arbitration provision does not negate the merits of its contract claim, and it notes that Defendant has not committed to moving to compel arbitration if its Motion is granted.

The court agrees that the existence of an agreement to arbitrate is not a defense to Plaintiff's contract claim. On the other hand, the parties' remaining contentions regarding Defendant's mitigation and contract arguments present a closer call, as they turn on disputed facts and legal issues. The liberal standard for setting aside defaults and the strong policy favoring trying cases on the merits, however, weighs in favor of resolving these disputes in the context of a motion to

dismiss under Rule 12(b)(6) or a summary judgment motion. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) ("We have adopted a policy in favor of resolving cases on their merits and against the use of default judgments.") (citations omitted). Accordingly, the court determines this factor and the remaining factors weigh in favor of setting aside the clerk's entry of default notwithstanding Plaintiff's arguments to the contrary.

### IV.     Conclusion

For the reasons discussed, the court **grants** Defendant's Motion to Set Aside Clerk's Entry of Default (Doc. 12) and **sets aside** the clerk's entry of default (Doc. 8). As this ruling moots Plaintiff's request for entry of a default judgment, the court also **denies as moot** Plaintiff's Motion for Default Judgment (Doc. 9).

**It is so ordered** this 3rd day of March, 2025.

Sam A. Lindsay  
United States District Judge